## 11673

### ORENSTEIN *ET AL.* v. NEW JERSEY INSURANCE CO.

#### (127 S. E., 570)

1. Trial—Request for Submission of Particular Defense and Assignment of Error in Court's Refusal Held Not Precluded by Court's Prior Ruling Out of Such Defense.—Court's ruling out of case of particular defense does not preclude defendant from subsequently asking that jury be allowed to pass on facts relative thereto, or from complaining of Court's refusal of such request.

2. Insurance—Insurer Held Entitled to Have Jury Pass on Question Whether Insured Had Falsely Sworn to Material Fact With Intent to Deceive.—In suit on fire insurance policy, defendant *held* entitled to have jury pass on facts relative to question whether plaintiff had falsely sworn as to material fact wilfully and with intent to deceive.

Note: On effect of false swearing in proofs of loss, see note in 32 L. R. A. (N. S.), 453.

3. INSURANCE—INSTRUCTION THAT PROVISION OF POLICY AS TO INCREASED HAZARD WITHIN KNOWLEDGE "OR" CONTROL OF INSURED SHOULD BE READ KNOWLEDGE "AND" CONTROL HELD ERRONEOUS.—Court's instruction, in analyzing provisions of fire insurance policy, that provisions relative to increased hazard within knowledge "or" control of insured should be read within knowledge "and" control, *held* erroneous, notwithstanding Court used word "or" in other parts of charge.

4. INSURANCE—UNDER STANDARD LOSS PAYABLE CLAUSE MORTGAGEE'S RIGHTS NOT AFFECTED BY NEGLECT OF INSURED.—Under standard or union form of loss payable clause, mortgagee is entitled to full protection, and no act or neglect of insured can prejudice his rights.

5. INSURANCE — UNDER SIMPLE OR SHORT FORM OF LOSS PAYABLE CLAUSE, MORTGAGEE BOUND BY APPRAISAL PURSUANT TO TERMS OF POLICY.—Under simple or short form of loss payable clause, mortgagee is bound by appraisal performed under terms and conditions of policy, especially when loss payable clause is made subject to provisions of policy.

6. INSURANCE—TAKING OF FIRE INSURANCE POLICY AS COLLATERAL SECURITY DOES NOT MAKE MORTGAGEE PARTY TO INSURANCE CONTRACT.—Taking of fire insurance policy as collateral security to loan does not make mortgagee a party to contract of insurance.

7. INSURANCE—TAKING OF FIRE POLICY AS COLLATERAL SECURITY DOES NOT IPSO FACTO CREATE RELATION OF ASSIGNOR AND ASSIGNEE.—Taking of fire insurance policy as collateral security to loan does not *ipso facto* create relation of assignor and assignee.

8. INSURANCE—WHERE POLICY PROVIDES METHOD OF DETERMINING LOSS, HOLDER OF POLICY, AS COLLATERAL SECURITY OR UNDER ASSIGNMENT, HAS NO HIGHER RIGHTS THAN INSURED.—Where fire policy provides method of determining amount of loss, such provisions are binding on parties thereto, and holder of policy, as collateral security or under assignment from insured, has no higher rights than were vested in insured.

9. INSURANCE—POLICY CONSTITUTES CONTRACT PROVISIONS OF WHICH ARE BINDING, UNLESS WAIVED OR ANNULLED FOR LAWFUL REASONS.—Insurance policy constitutes contract between parties, provisions of which are binding, unless waived or annulled for lawful reasons.

10. TRIAL—PERMITTING JURY TO CONSIDER STATEMENT OF AMOUNT OF LOSS PREPARED BY PLAINTIFF'S ATTORNEYS AND NOT ADMITTED IN EVIDENCE HELD NOT ERROR.—In action on fire insurance policy, involving complicated facts, it was not error for trial Court to allow jury to consider statement of amount of loss prepared by plaintiff's attorneys, though not offered in evidence, in view of Court's large discretion in conduct of case.

Before WHALEY, J., Richland, November, 1923. Reversed and remanded.

Action by Harry Orenstein and D. Karesh, executors of J. Orenstein and Carolina National Bank of Columbia against the New Jersey Insurance Co. of Newark, N. J. Judgment for plaintiffs and defendant appeals.

*Messrs. Augustine T. Smythe* and *Benet Shand & Mc-Gowan,* for appellant, cite: *Mortgagee not a necessary party to appraisal agreement:* Joyce Ins. Sec. 3249; 19 L. R. A., 321; 68 Me., 313; 69 L. R. A., 924; 25 L. R. A. (N. S.), 740; 13 L. R. A. (N. S.), 459: *Force and effect of arbitration and award:* 58 S. C., 299; 70 S. C., 543; 26 C. J., 424. *When statement of value may be considered fraudulent:* 27 S. E., 873.

*Messrs. Robert Moorman* and *D. W. Robinson,* for respondents, cite: *Exceptions defective:* 99 S. C., 217; 114 S. C., 323; 121 S. C., 88; 122 S. C., 83; 126 S. C., 272; 114 S. C., 254; 110 S. C., 163; 100 S. C., 43; 118 S. C., 93; 119 S. C., 54; 123 S. C., 23; 121 S. C., 360; 121 S. C., 328; 122 S. C., 272. *Where no ground of objection is stated erroneous admission of testimony will not be considered on appeal:* 53 S. C., 80; 66 S. C., 68; 87 S. C., 331; 89 S. C., 378; 90 S. C., 513; 92 S. C., 236; 94 S. C., 324; 100 S. C., 115; 103 S. C., 467; 110 S. C., 122; 110 S. C., 463; 115 S. C., 500; 120 S. C., 380; 121 S. C., 49; 121 S. C., 426; 124 S. C., 345. *Evidence itself was admissible in discretion of Court:* 65 S. C., 158; 41 S. C., 193; 110 S. C., 128; 7 Rich. L., 535. *False swearing that will work a forfeiture of insurance:* 32 C. J., 1270; 125 S. C., 470; 82 S. C., 426; 151 N. Y. Supp., 945. *Increase of hazard by person other than insured will not avoid policy unless insured has knowledge of such increase in time to prevent loss:* 28 L. R. A. (N. S.), 218; 91 Atl., 978; 37 L. R. A. (N. S.), 603; 97 S. E., 50; 66 N. E., 454; L. R. A., 1915-D 187; 26 Cyc., 1202. *Provisions of policy*

*strictly construed against insurer:* 115 S. C., 53; 102 S. C., 215; 96 S. C., 430; 96 S. C., 44; 94 S. C., 299; 263 U. S., 167. *Mortgagee not bound by arbitration and award to which he did not assent:* 18 Sou., 414; 14 Ky. L. Rep., 859; 194 N. W., 6; 76 So., 153; 63 Texas 282; 13 Atl., 648; 124 Mass., 126; 19 N. E., 159; 5 R. I., 394; 71 N. Y., 509; 17 L. R. A., 514; 97 Ill., 439; 70 Pac., 149; 25 L. R. A. (N. S.), 741; 33 C. J., 700.

February 4, 1925.    Rehearing denied April 9, 1925.

The opinion of the Court was delivered by ACTING ASSOCIATE JUSTICE W. C. COTHRAN.

At the call of this case in the Supreme Court the attorneys for the appellant made a motion that they be allowed to amend their exceptions by pointing out more definitely the errors of which complaint was made. After due consideration this Court is of the opinion that the motion should be, and the same is hereby, granted.

This suit by the plaintiff is to recover $2,232.47 and intrest alleged to be due it by the defendant upon the following complaint:

(1) That plaintiff, J. Orenstein, is a resident of Richland County, State of South Carolina; and plaintiff the Carolina National Bank of Columbia, is a corporation, having its principal place of business in the County and State aforesaid.

(2) That the defendant was at the times hereinafter mentioned and still is, a corporation engaged in the business of writing insurance against loss by fire for compensation; and that said defendant was and is engaged in such business in Richland County, State of South Carolina.

(3) That on the 8th day of December, 1922, said defendant in consideration of a premium of forty-two and 51/100 dollars, made, executed and delivered its contract, by which it insured plaintiff, J. Orenstein, in the sum of twenty-five hundred ($2,500) dollars, against loss by fire

on his stock of merchandise situated at No. 1225 on the west side of Huger Street, in the City of Columbia, state aforesaid, for the term of one year.

(4) That it was further provided in said policy that any loss or damage incurred thereunder should be payable to the Carolina National Bank of Columbia, as its interests may appear.

(5) That thereafter, on the 21st day of March, 1923, a fire occurred by which a large portion of the stock of goods of said plaintiff Orenstein was destroyed.

(6) That by reason thereof the defendant has become liable to pay to the plaintiffs the sum of twenty-two hundred thirty-two and 47/100 ($2,232.47) dollars, which sum is due to plaintiff, the Carolina National Bank of Columbia.

(7) That the defendant, after due notice, has refused to pay said sum and denies all liability therefor.

Wherefore plaintiffs pray judgment against defendant for the said sum of twenty-two hundred thirty-two and 47/100 ($2,232.47) dollars, together with interest, and for such costs and other and further relief as plaintiffs may be entitled to in the premises.

The answer of the defendant set out several defenses to the complaint, one of them being that after the fire an appraisal of the loss and damage was fixed by arbitrators selected under the terms of the policy, and that under the finding of the arbitrators, which was binding upon the plaintiff, the recovery could in no event exceed the sum of $862.80.

Other defenses set out in the answer were to the effect that the policy was rendered void by reason of false swearing by the insured, and also that the hazard had been increased by reason of a copious supply of kerosene or gasoline being applied to the stock of goods, which was done under the control or knowledge of the insured. The verdict was for the plaintiff in the sum of $2,102.43 and $53.14 interest.

The facts of the case as brought out by the testimony will

be alluded to for the purpose of showing the real setting out of which this controversy arose.   Jacob Orenstein was a wholesale clothing merchant of the City of Columbia, and became indebted to the plaintiff bank in quite a large sum of money.   As collateral security to this indebtedness he gave to the bank, amongst other things, the insurance policy covering his stock of goods.   This policy had attached to it the short form of loss payable clause designating that the loss by fire covered by the policy should be payable to the bank as its interest might appear.   A fire occurred there- · after under most suspicious circumstances and, upon failure of the insured and the insurance company to agree as to the amount of the loss, resort was had to the policy to ascertain how the amount of the loss should be determined under its provisions.   Each party chose an arbitrator, and the two arbitrators then chose an umpire, all three being disinterested parties.   Some time after the fire the insured, Jacob Orenstine, died, and this action is, therefore, prosecuted by his personal representatives.

During the trial of the case his Honor, Judge Whaley, 1, 2 decided on plaintiffs' motion that there was not sufficient testimony to be considered by the jury as to the defense of false swearing by the insured.   Upon this ruling no exception was taken.   The attorneys for the defendant presented a request to charge on this proposition which was refused, and complain of error on the part of the trial Judge in regard thereto.

This identical question has been very recently discussed by this Court in the case of *De Shields v. Insurance Co.*, 125 S. C., 457; 118 S. E., 817.   We quote from pages 470, 471 (118 S. E., 821) of that case:

"The fourth proposition advanced by appellant (exception 5) is that the policy was avoided by the false statements under oath, contained in the proof of loss submitted by plaintiff to the effect 'That at the time of the fire or loss there was no other insurance on said truck, and that no

other person had any interest in said truck by mortgage or otherwise than the Southern Auto & Supply Company.' Generally speaking, to avoid a policy for false swearing in the proofs of loss, 'the false statements must have been made intentionally and willfully'—must have been made, according to perhaps the greater weight of authority, 'with intent to deceive or defraud,' and 'must be material.' " 26 C. J., 383, § 493; 14 R. C. L., 1343; note, 32 L. R. A. (N. S.), 453. Whether the statements here attributed to the ·plaintiff were, in fact, false, or were material, or were willfully made with intent to deceive and defraud, involved the determination of disputed issues of fact, which the trial Judge properly submitted to the jury."

See, also, *Rubery v. Brown,* 50 S. C., 397; 27 S. E., 873, and *Laird v. Insurance Co.,* 82 S. C., 424; 64 S. E., 404.

From these cases it appears that the question of false swearing is a fact in the case to be submitted to the jury together with the other facts in the case. Although the trial Judge had ruled this defense out of the case, yet that ruling did not preclude the defendant from asking that the jury pass upon the facts relative thereto. It is the same as though the defendant had charged error on the part of the trial Judge in ruling out that defense. This exception is, therefore, sustained.

Error is imputed to the trial Judge in charging the jury that the increase of hazard should be within the knowledge and control of the insured in order to defeat the policy, whereas the provision of the policy was as to control or knowledge. The charge objected to is as follows:

"The Court further charges you that in this clause of the policy as to increased hazard by means within the knowledge or control of the insured, these words 'knowledge or control' carry both the idea of knowledge and control, and that the increased hazard must be to the knowledge of the insured and within his control. An increase of hazard by another

person, even if such other person were in the employ of the
insured, would not avoid the policy, unless it were within the
knowledge of the insured."

"I charge you that; that is a fair principle under this
policy, because otherwise such a provision in reality would
make the insured the guarantor of every one whom he had
in his employ, and I don't think the policy meant that."

It is true that in two other places in his charge the trial
Judge used the word "or" as appears in the policy. The
policy was the contract, and if the trial Judge had merely
used the wrong word inadvertently his error would have
been harmless. In *Lewis v. Telegraph Co.*, 57 S. C., 325;
35 S. E., 556, the Court says:

"Where the Circuit Judge has once stated the law with
entire accuracy, and afterwards is not quite as careful as he
might have been in observing the distinction between the
copulative conjunction ' and' and the disjunctive conjunction
'or,' this Court will not be swift in imputing such want of
literary excellence or verbal accuracy in the charge to that
class of errors known to the profession as reversible errors."

However, the trial Judge was subjecting the provisions
of the contract to a critical analysis and the rule announced
in *Smith v. Railway*, 53 S. C., 121; 30 S. E., 697, must con-
trol. The Court in that case says:

"It seems to us that it will not be reversible error, if a
Judge has read the statute itself in the presence of the jury,
and should thereafter, in commenting upon the law, drop the
disjunctive conjunction 'or,' using instead the copulative con-
junction 'and,' unless he was doing more than running over
the statutory proviso. If, however, the Circuit Judge was
subjecting the language employed in the statute to a critical
analysis, whereby and wherein it became important that the
difference in meaning and effect between the words 'and' and
'or' should be carefully noticed, then, in such an instance, it
would be error."

This exception is, therefore, sustained.

By far the most serious question raised by this appeal is presented by ecxeptions which charge error on the part of the trial Judge in holding that the bank was the real party in interest; that it was entitled to representation in the appraisal proceedings; and that it was not bound by the appraisal to which it was not a party.

Before adverting to the authorities on this subject, it may be well to note a few very important facts. The contract of insurance evidenced by the policy issued to Orenstein was solely between the insurance company and the insured. The bank was in no sense a party to the contract at the time it was entered into between the original parties thereto. At a later date the bank accepted the policy as collateral security for a debt, and the short form of "loss payable" clause was made a part thereof. This clause did not make the bank a party to the contract, but was merely an amendment to the original contract between the original parties providing for the payment to the bank of such loss as might be determined in favor of the insured. By the very clause itself the provisions of the policy were not in any way disturbed for it provided:

"Loss Payable

"Columbia, S. C., Agent, May 25, 1922.

"It is agreed that any loss or damage that may be ascertained and proven to be due the assured under this policy shall be held payable to the Carolina National Bank of Columbia as its interest may appear, subject, nevertheless, to all conditions of the policy. Attached to and forming part of policy No. 5042267 of the New Jersey Insurance Company of Newark, New Jersey."

In case of a fire loss and a disagreement as to the amount between the insured and the insurance company what could or should be done? The contract between them was still in its "pristine vigor" and no new party had been added to it. Appraisal was the remedy provided and an appraisal was duly had by disinterested parties. It will be noted that no

objection has been made to the personnel of the appraisers; no charge of incompetence or fraud has been lodged against them. The only objection is that the bank was entitled as a matter of law to participation in the work of the appraisers. This is a very important question to all parties, and a careful review of the authorities is necessary to the proper determination of it so that the law be settled at least in South Carolina.

There can be no doubt of the proposition that when the so-called "union mortgage clause" is used the mortgage is to be fully protected, in fact some of the Courts hold that it is the same as though another contract had been entered into. The case of *Erie Brewing Co. v. Insurance Co.*, 81 Ohio St., 1; 89 N. E. 1065; 25 L. R. A. (N. S.), 740; 135 Am. St. Rep., 735; 18 Ann. Cas., 265, is the only case which holds the contrary. A different view is taken by some of the Courts where there is a simple loss payable clause, they holding that the mortgagee is not a necessary party to the appraisal proceedings. The question is one of great confusion, and a reconciliation of the authorities is practically hopeless.

As the question has never been determined in this State, we will be forced to adopt the conclusion which appears most reasonable, giving due weight to the opinions of other Courts to which access is available at this time.

In the following cases the mortgagee has been adjudged bound by an appraisement to which he was not a party: *Insurance Co. v. Johnson*, 22 Colo., 476; 45 P., 431. *Collinsville Sav. Soc. v. Insurance Co.*, 77 Conn., 676; 60 A., 647; 69 L. R. A., 924. *Chandos v. Insurance Co.*, 84 Wis., 184; 54 N. W., 390; 19 L. R. A., 321. To these may be added Joyce on Insurance, § 3249.

There are several cases holding the contrary doctrine which are relied upon by the respondent in this case and which will be noted, as follows: *Bergman v. Insurance Co.*, 92 Ky., 494; 18 S. W., 122; 15 L. R. A., 270. This case

holds that the mortgagee is entitled to notice of and partici-
pation in the award.    The opinion says:

"But the indorsement of the policy by appellees for the
benefit of the appellant,  *  *  *  and his acceptance of the
indorsement, bound him to the terms of the policies in refer-
ence to the arbitration, as well as to other things; and if it
be true that the policies require that the insured alone shall
arbitrate with the appellees, then the appellant  *  *  *  is
bound by its terms in that regard.    But the policies do not
confine that matter to the insured and the appellees.    The
policies say 'the parties,' which term, in our opinion, means
the parties in interest."

There is no such loophole in the case at bar.

In *Morris v. Insurance Co.,* 14 Ky. Law Rep., 879, it was
held that the insured and the insurer could not by agreement
bind the rights of the mortgagee.    It does not appear that
arbitration was had according to the terms of the policy.

In *Insurance Co. v. Stein,* 72 Miss., 943; 18 So., 414,
while the Court holds that the mortgagee was not bound by
a most inadequate appraisal, it does not appear that the ap-
praisal was undertaken according to the provisions of the
policy.

In *Hall v. Fire Ass'n,* 64 N. H., 405; 13 A., 648, the
Court says that "the insured could no more adjust the
amount of the loss than he could release it."    Again, no
mention of and appraisement according to the terms of the
policy.

In *Brown v. Insurance Co.,* 5 R. I., 394, it was distinctly
held that the mortgagee had the right to representation in
fixing the amount of the loss but the Court says:

"Arbitration is certainly a very proper mode of ascertain-
ing the amount of a loss under a fire policy, and, as such, is
contemplated by the instrument itself; but who must be
parties to the submission to make the award binding in any
particular case, unless the case be provided for in the policy,

depends upon principles altogether independent of the policy," etc.

—again showing that the provisions of the policy must govern.

In *Hathaway v. Insurance Co.,* 134 N. Y., 409; 32 N. E., 40; 17 L. R. A., 514, an adjustment of the insurance was made between the insurer and the insured and the Court held that the mortgage was not bound by the adjustment. It nowhere appears in the report of this case that the adjustment was made according to the terms of the policy.

In *Insurance Co. v. Field,* 18 Colo. App., 68; 70 P., 149, the Court had under consideration this same question arising under a standard union mortgage clause. The Court held that the mortgagee was not bound by an agreement between the owner and the insured. As before stated, we think there is no doubt of the soundness of the position. The distinction between the two forms of mortgage clause is that in the standard or union form it is provided that no act or neglect of the insured shall affect the rights of the mortgagee; while in the short form the loss is payable to the mortgagee as his interest may appear, and in many cases, notably the case under consideration, "subject to the provisions of the policy."

We are content to rest our conclusion in this case upon the following extract from Joyce on Insurance, *supra,* together with the other authorities cited:

"Where a policy insuring premises against loss by fire and having a mortgage clause attached, provides that in the event of a loss and a disagreement as to the amount thereof, there shall be an appraisal fixing such amount, the appraisers to be chosen by the insurer and the insured; such provision is binding on the mortgagee and he is bound by that appraisal, although he did not participate in the appointment of the appraisers, had no notice of the appraisement or of the proceedings resulting therein, and a 'mortgage clause' attached to a policy at the time of execution which makes the

loss, if any, under the policy, payable to the mortgagee, as his interest may appear is not an assignment of the policy to the mortgagee, and in the absence of fraud or collusion he is bound by the award of the appraisers, provided for and required by the terms of the policy in the event of a disagreement between the insured and the insurance company as to the amount of the loss, although the mortgagee was not a party to and had no notice of the appraisement and award."

The difficulty attached to this question seems to have arisen from certain loose expressions in the various cases superinduced by imperfect statements of the facts of the individual cases. From the authorities we reach the following conclusions:

(1) In standard or union form of loss payable clause the mortgagee is entitled to full protection, and no act or neglect of the insured can prejudice his rights.

(2) In the simple or short form of loss payable clause, the mortgagee is bound by the appraisal when it is performed under the terms and conditions of the policy, especially when the loss payable clause is made subject to the provisions of the policy.

(3) That the taking of the policy as collateral security to a loan does not make the mortgagee a party to the contract of insurance.

(4) That the taking of the policy as collateral security to a loan does not *ipso facto* create the relation of assignor and assignee.

(5) That in cases where the policy provides a method for determining the amount of loss, such provisions are binding upon the parties thereto, and that the holder of the policy as collateral security, even under an assignment, can take no higher rights than were vested in his assignor.

(6) That the policy creates the contract between the parties, the provisions of which are binding, unless waived or otherwise annulled for lawful reason.

We cannot say there was error on the part of the trial Judge in allowing the jury to consider a statement of the amount of loss as prepared by the attorneys for the plaintiffs. This was a very complicated case, and the trial Judge was anxious that the jury should have all the light possible. While we do not generally approve of the practice of allowing jurors to consider papers, statements, or documents of any kind not offered in evidence, yet in this case we cannot say that discretion was abused, always remembering that the discretion of the trial Judge in the conduct of cases before him covers a very wide latitude.

It is the judgment of this Court that the judgment of the lower Court be reversed, and that the cause be remanded to the County Court of Richland County for a new trial.

MESSRS. JUSTICES FRASER and MARION concur.

MR. CHICE JUSTICE GARY and MR. ACTING JUSTICE T. P. COTHRAN did not participate.

MR. JUSTICE WATTS disqualified.