ORENSTEIN et al. v. STAR INS. CO. OF AMERICA.

SAME v. UNION FIRE INS. CO. OF PARIS, FRANCE.

(Circuit Court of Appeals, Fourth Circuit. January 12, 1926.)

Nos. 2396, 2397.

1. Insurance ⬤⟿665(3)—Evidence held sufficient to sustain finding of breach of condition against increase of hazard.

Evidence of finding of insured goods soaked with inflammables and other circumstances *held* sufficient to sustain finding of breach of condition against increase of hazard by means within control or knowledge of insured.

2. Insurance ⬤⟿395—Insurer, in view of prior nonwaiver agreement, held not to have waived defense of increase of hazard by not denying liability when rejecting proofs as not correctly stating loss.

Insurer did not waive defense of increase of hazard by not denying liability on this account, when rejecting proofs of loss on the ground that they did not correctly state the loss; there being then no denial of liability on any ground, and the rejection being but an "action taken" relative to amount of loss, within the prior nonwaiver agreement of the parties expressly preserving insurer's rights and defenses from loss by waiver.

3. Insurance ⬤⟿553(1)—False statement of insured in proofs of loss held false swearing within condition of policy, and not mere matters of opinion.

False statements of insured in proofs of loss, being a sworn estimate of value by one having special knowledge, with intent that insurer, ignorant on the subject, and with unequal means of knowledge, should rely on it to its injury, were not mere matters of opinion, but false swearing, within condition of policy against it.

4. Insurance ⬤⟿559(1)—Breach of condition against false swearing is not waived by denial of liability if proofs of loss containing such swearing are in fact offered.

Denial of liability by insurer, while waiving proofs of loss, does not waive breach of condition against false swearing, if proofs of loss containing false swearing are in fact offered.

5. Insurance ⬤⟿555—Insured held not estopped to contest for false swearing in proofs of loss, because of intention when taking nonwaiver agreement to contest for increased hazard.

Intention of insured at time of taking nonwaiver agreement to contest policy for increased hazard did not estop it to set up false swearing in proofs of loss as cause of forfeiture.

6. Insurance ⬤⟿311(3).

Mere open loss payable clause does not save appointee against defenses of breach of increased hazard and false swearing clauses, available against insured.

7. Insurance ⬤⟿311(3)—Mortgage interest clause in policy held not to exclude conditions of policy as against mortgagee, unless so stated in rider containing loss payable clause.

Mortgage interest clause in policy containing certain agreements with respect to mortgagee, such as notice to it of cancellation, right to file proofs of loss, etc., which insurer must observe, concluding, "except as stated" here agreement between mortgagee and insurer "shall be only as stated by rider added hereto," does not exclude conditions of policy as against mortgagee, such as those against increase of hazard and false swearing, unless they are contained in rider containing loss payable clause, but preserves them, unless they are expressly eliminated by the rider.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Columbia; Ernest F. Cochran, Judge.

Two separate actions by Harry Orenstein and others, one against the Star Insurance Company of America, and the other against the Union Fire Insurance Company of Paris, France, tried together. Judgment for defendant in each case, and plaintiffs bring error. Affirmed.

There were two separate actions instituted to recover on fire insurance policies issued by the Star Insurance Company of America and the Union Fire Insurance Company of Paris, France, covering a stock of merchandise which was partially destroyed by fire in the city of Columbia, S. C. The policies were issued to Jacob Orenstein, with a loss payable clause in favor of the Carolina National Bank. The two actions were instituted by the bank and the executors of the insured, Jacob Orenstein, who died shortly after the fire, and, as they involved the same questions, they were by consent tried together. There was a verdict and judgment in favor of the defendants in both cases, and plaintiffs bring this writ of error. For convenience, the parties will be referred to in this opinion according to the positions they occupied in the court below.

In addition to a general denial and the plea of an appraisal of loss, which, in view of the verdict for defendants, it is unnecessary to consider, the defendants specially pleaded breach of the conditions of the policies against increase of hazard and false swearing. Plaintiffs denied that there was sufficient evidence of breach of either condition to justify the submission of these defenses to the jury; and the plaintiff bank contended in addition that, even if there were a breach of these conditions on the part of the insured, its right to recover under the policies could not be affected thereby.

The provision of the policies with respect to increase of hazard was:

"Unless otherwise provided by agreement in writing added hereto, this company shall not be liable for loss or damage occurring * * * while the hazard is increased by any means within the control or knowledge of the insured."

The evidence showed that the goods, after having been insured for a sum largely in excess of their value, were soaked with kerosene or gasoline. The insurance commissioner of South Carolina went to the warehouse on the morning after the fire, which was extinguished after it had destroyed only a part of the building and merchandise, and found that the stock which had been saved from the fire was soaked with these highly inflammable liquids, which had been poured also upon the shelves and tables. The insured was in the warehouse all of the day before the fire, alone, except for an hour or two, when his son was with him, and except for one customer, who bought goods and departed. He left the warehouse about 6 o'clock in the afternoon, locking the door and taking the key. The fire occurred in the early hours of the following morning. The warehouse was a brick building and all of the windows and doors were fastened and barred, and it was practically impossible that the building should have been fired except from the inside, and there was no evidence that it was broken and entered. Other circumstantial evidence as to whether the increase of hazard due to the soaking of the goods with gasoline was within the control and knowledge of the insured was the fact that insured was heavily indebted to the plaintiff bank, which had a mortgage on everything that he owned. His cash sales had fallen off to practically nothing, and he had a stock of secondhand goods which he could not sell.

As to the false swearing, the condition in the policies was:

"This entire policy shall be void if the insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof; or in case of any fraud or false swearing by the insured relating to this insurance or the subject thereof, *whether before or after loss.*"

The insured filed proofs of loss in which he swore that the sound value of the goods damaged was $43,719.70, and that his loss and damage amounted to $35,719.70. The expert appraisers of the Underwriters Salvage Company estimated the sound value at $22,622.51 and the total damage at $12,694.-22. The appraisers selected by the insured and the companies, under the terms of the policies, to determine the amount of the loss fixed the sound value of the goods at $26,-237.95 and the total damage at $13,804.90. The valuation of these experts was made from an examination of the damaged merchandise, as only a very small portion of the goods was completely destroyed.

The proofs of loss were filed after the plaintiffs and defendants had executed a nonwaiver agreement containing the following provisions:

"That any action taken, request made, or information now or hereafter received by said party of the second part, in or while investigating and ascertaining the cause of fire, the amount of loss or damage, or other matter relative to the claim of the said party of the first part, for property alleged to have been lost or damaged by fire on the 21st day of March, 1923, shall not in any respect or particular change, waive, invalidate, or forfeit any of the terms, conditions, or requirements of the policies of insurance of the party of the second part held by the party of the first part or any of the rights whatever of any party hereto.

"The intent of this agreement is to have and preserve all the rights of the parties hereto, and permit an investigation of the claim and the determination of the amount of the loss or damage in order that the party of the first part may not be unnecessarily delayed in their business, and that the amount of their claim may be ascertained and determined without regard to the liability of the party of the second part and without prejudice to any rights or defenses which said party of the second part may have."

The rights of plaintiff bank were based upon a mortgage covering the stock of goods in question, and upon a loss payable clause in favor of the bank attached to the policies. Both policies contained the following provision:

"Mortgage Interests.—If loss or damage is made payable, in whole or in part, to a mortgagee, this policy may be canceled as to such interest by giving to the mortgagee a ten days' written notice of cancellation. Upon failure of the insured to render proof of loss such mortgagee shall, as if named as insured hereunder, but, within sixty days after such failure, render proof of loss and be subject to the provisions hereof as to appraisal and time of payment. On payment to a mortgagee of any sum for loss or damage hereunder, if this company shall claim that, as to the mortgagor or owner, no liability existed, it shall, to the extent of such payment, be subrogated to the mortgagee's right of recovery and claim upon the collateral to the mortgage debt, but without impairing the mortgagee's right to sue; or it may pay the mortgage debt and require an assignment thereof and of the mortgage. Except as stated in this paragraph, the agreement between a mortgagee and this company shall be only as stated by rider added hereto."

Attached to the policies were riders entitled "Mercantile Stock," describing the stock of goods and location, and following the description a loss payable clause as follows:

"It is understood and agreed that loss, if any, shall be payable to the Carolina National Bank as its interest may appear."

D. W. Robinson, of Columbia, S. C. (Robert Moorman, of Columbia, S. C., on the brief), for plaintiffs in error.

Augustine T. Smythe, of Charleston, S. C. and Christie Benet, of Columbia, S. C., (Benet, Shand & McGowan, of Columbia, S. C., on the brief), for defendants in error.

Before WADDILL, ROSE, and PARKER, Circuit Judges.

PARKER, Circuit Judge (after stating the facts as above). There are twenty-four assignments of error to the action of the court below, many of which it is unnecessary to discuss. A careful analysis of the case shows that three major questions are presented for our determination: (1) Was there sufficient evidence of a breach of the condition against increased hazard? (2) Was there sufficient evidence of the breach of condition against false swearing? and (3), if there was a breach of such conditions, were the rights of plaintiff bank under the policies of insurance forfeited thereby?

[1, 2] As to the first question, we think that there was ample evidence to sustain a finding that there was a breach of the condition against increase of hazard. The fact that insured was in the warehouse practically alone all of the day prior to the fire; that he left with the key of the warehouse in his pocket at 6 o'clock in the evening; that the building was so constructed and closed that it was impracticable for it to be soaked with kerosene or gasoline from without; that the goods and the interior of the building were found soaked with one or the other of these inflammable liquids; that all of the property of insured was mortgaged; and that the goods in the warehouse were overinsured—all of these facts and circumstances together made a case where it was proper that the jury pass on the question whether there was not an increase of hazard within the knowledge and control of the insured. Orenstein v. New Jersey Ins. Co., 127 S. E. 570, 131 S. C. 498, a decision by the Supreme Court of South Carolina in a case growing out of the same fire and involving the same facts. Contention is made by plaintiffs, however, that defendants waived this defense of increase of hazard by not denying liability on this ground, when they rejected the proofs of loss

tendered by insured. Without questioning for a moment the rule laid down in the case cited by plaintiffs (Ohio & Miss. Ry. Co. v. McCarthy, 96 U. S. 267, 24 L. Ed. 693), to the effect that, where a party has given a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground and put his decision upon another and a different consideration, we think that that rule has no application here. Defendants did not deny liability on the policy when rejecting the proofs of loss upon a different ground from that set up in the answer. They did not deny liability at all. They simply rejected the proofs submitted, on the ground that they did not correctly state the loss. This could not amount to a waiver, because the rejection of the proofs of loss was an "action taken" under the terms of the nonwaiver agreement quoted above, which expressly preserved defendants' rights and defenses. We think, therefore, that the learned trial judge correctly submitted to the jury the defense growing out of the increase of hazard alleged, and, from an examination of the entire charge, we are of opinion that he correctly stated the law applicable thereto.

[3] Plaintiffs contend that there was error in submitting the defense of false swearing to the jury, (1) because the false statements contained in the proofs of loss were mere matters of opinion, (2) because denial of liability under the policies waived proofs of loss, and (3) because the intention to contest the policy for increased hazard at the time of taking the nonwaiver agreement estops the defendants from setting up causes of forfeiture growing out of proofs of loss submitted under the agreement. None of these propositions can be maintained. As to the first, the oath as to values in the proofs of loss was not a mere matter of opinion. It was a sworn estimate of value by one having special knowledge of the property made, with the intent that the other party, ignorant on the subject, and with unequal means of information, should rely upon it to his injury. Ruberg v. Brown, 27 S. E. 873, 50 S. C. 397. It appeared that this estimate of value was grossly excessive, and the circumstances surrounding the fire were such as to warrant the conclusion that it was willfully false and fraudulent. The rule applicable is well stated in Ruling Case Law as follows:

"An estimate of the value of insured property by the insured in his proofs of loss will not constitute fraud, if he places the amount too high through inadvertence or mistake, but a willfully false and fraudulent valuation of the property destroyed will of course avoid the policy." 14 R. C. L. 1344; Hiller v. Ins. Co. of North America, 52 So. 104, 125 La. 938, 32 L. R. A. (N. S.) 453, and note; Orenstein v. N. J. Ins. Co., 127 S. E. 570, 131 S. C. 498.

[4, 5] As to the second proposition, it is unquestionably true that denial of liability waives proofs of loss, but it does not waive the breach of condition involved in false swearing, if proofs of loss are in fact offered, and that is the proposition with which we are dealing here. Furthermore, in this case there had been no denial of liability at the time insured made the alleged false oath and filed the proofs of loss. No authority has been cited which supports the third proposition, and it is obviously unsound. The execution of the nonwaiver agreement was in itself notice that the defendants might assert defenses against the policies. The fact that the defendants did intend to assert such defenses could not possibly preclude them from insisting that any action taken under the nonwaiver agreement be taken in accordance with the terms and provisions of the policies or from insisting on a forfeiture in case of a breach of its conditions. We think, therefore, that the defense based upon false swearing was properly submitted to the jury.

[6] This brings us to the third question, which is the real question of the case: Was the District Judge correct in holding that the plaintiff bank would be precluded from recovering on the policies by breaches on the part of the insured of the conditions against increase of hazard and false swearing? We think that he was. The mortgage clause attached to the policies was not the union or standard mortgage clause, which operates as a separate and independent insurance of the mortgagee's interest, and which "in express terms, excepts the insurance of the mortgagees from many or all of the deeds and delinquencies of the mortgagor." Delaware Ins. Co. v. Greer (C. C. A. 8th Ct.) 120 F. 916, 57 C. C. A. 188, 61 L. R. A. 137; Syndicate Ins. Co. v. Bohn (C. C. A. 8th Ct.) 65 F. 165, 12 C. C. A. 531, 27 L. R. A. 614; 14 R. C. L. 1085. It was a mere open loss payable clause, the effect of which was to make the mortgagee the simple appointee of the insured to receive the proceeds of the policy to the extent of his interest, and "to place his indemnity at the risk of every act and omission of the mortgagor that would avoid, terminate, or affect the insurance of the latter's interest under the terms of the policy." Del.

Ins. Co. v. Greer, supra, Brecht v. Law, Union & Crown Ins. Co. (C. C. A. 9th Ct.) 160 F. 399, 87 C. C. A. 351, 18 L. R. A. (N. S.) 197; Orenstein v. New Jersey Ins. Co., 127 S. E. 570, 131 S. C. 498; Collinsville Savings Society v. Boston Ins. Co., 60 A. 647, 77 Conn. 676, 69 L. R. A. 924; Hill v. International Indemnity Co., 225 P. 1056, 116 Kan. 109, 38 A. L. R. 362; Hanson v. National Liberty Fire Ins. Co. (N. J. Sup.) 126 A. 453; 14 R. C. L. 1084; note of Judge Freeman, 58 Am. St. Rep. 671 et seq. The rule is tersely stated by the New Jersey Supreme Court, in the Hanson Case, supra: "The law is settled * * * that a mortgagee cannot recover if the owner could not."

As the owner Orenstein could not recover in case of breach of the conditions against increase of hazard or false swearing, neither could the mortgagee bank, which had no rights except under the open loss payable clause, and the District Judge correctly instructed the jury to that effect. It made no difference that the breach of condition as to false swearing occurred after the loss, for the rights of the mortgagee as we have seen were dependent upon the rights of the insured, and the policy provided for forfeiture for false swearing "whether before or after loss."

[7] Plaintiff bank contends however that, because of the provision in the policy under the heading "Mortgage Interest," quoted above, it is not affected by the conditions against increase of hazard and false swearing, as these conditions are not repeated in the rider containing the loss payable clause. This argument is based upon the decision in Queen Ins. Co. v. Dearborn, 51 N. E. 717, 175 Ill. 115, and a list of cases cited in the note to 18 L. R. A. (N. S.) at page 203, which interpret a clause in the policies involved in those cases reading as follows:

"If, with the consent of this company, * * * an interest under the policy shall exist in favor of a mortgagee, or of any person or corporation having an interest in the subject of insurance other than the interest of the insured as described herein, the *conditions* hereinbefore contained * * * *shall apply in manner expressed in such provisions and conditions of insurance* relating to such interest as shall be *written upon, attached, or appended hereto.*"

The cases relied upon by plaintiff are in direct conflict with the rule as established by the Circuit Courts of Appeals of the Eighth and Ninth Circuits. Brecht v. Law Insurance Co., supra; Delaware Ins. Co. v. Greer, supra. But it is not necessary for us to decide which of these authorities we shall follow; for a comparison of the language of the foregoing provision with the language of the policies before us shows clearly that the cases relied on by plaintiffs are not remotely in point. The language just quoted relates to the conditions in the policies of insurance. The provision in the policies in suit sets forth certain agreements with respect to mortgagees which it binds the company to observe, such as notice to mortgagee of cancellation, right of mortgagee to file proofs of loss, etc., and concludes, "Except as stated in this paragraph, the agreement between a mortgagee and this company shall be only as stated by rider added hereto." The effect of this language was not to exclude conditions unless included in the rider, but to exclude any contract whatever with the mortgagee other than stated in the paragraph unless included in the rider. Instead of eliminating the conditions as against the mortgagee, its plain purpose was to preserve the conditions and to preclude the assertion of any special rights on his part unless secured to him by a rider embodying same.

Much was said in the briefs with regard to the appraisal made under the provisions of the policy. As the jury have found that there was no liability whatever on the part of defendants, it is not necessary to discuss the exceptions relating to this phase of the case which deals with the extent of liability. There were exceptions also directed to the refusal of the court to give certain requests for instructions, some of which presented plaintiffs' contentions as to the matters which we have decided adversely to plaintiffs, and the others of which were substantially covered in the careful and able charge of the learned judge who tried the case.

After carefully reviewing the entire record and considering all of the assignments of error in the light of the very able brief of plaintiffs' counsel, we find no prejudicial error, and the judgment of the District Court is accordingly affirmed.